___FILED ___ENTERED
___LODGED ___RECEIVED

AUG 2 2 2005

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                    DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. PJM 03-3463 |
| v. ) | |
| ) | |
| **JANET ANDERSON MCLEAN, et al.,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

On December 4, 2003, pursuant to 26 U.S.C. §7405, the United States of America (the "Government") filed a Complaint to Recover Erroneous Tax Refund from Defendant Janet Anderson McLean individually and as the trustee of the Janet Anderson McLean Trust ("Trust").[1]

McLean as Trustee of the Trust has not filed an Answer to the Complaint. Accordingly, on March 31, 2005, the Court entered an Order of Default against McLean as Trustee of the Trust.

However, McLean in her individual capacity has answered the Complaint. The Government now moves for Summary Judgment against her individually on the grounds that it is entitled to judgment as a matter of law. McLean has filed an opposition.

No hearing is necessary to dispose of this matter. Local R. 105.6 (D. Md. 1999). Having considered the pleadings, the Court will GRANT the Government's Motion for Summary Judgment.

I.

According to the Complaint, McLean filed a fraudulent Form 1041 Federal Income Tax

---

[1] This action was commenced at the direction of the Attorney General of the United States and with the authorization of the Chief Counsel of the Internal Revenue Service ("IRS"), a delegate of the Secretary of the Treasury, pursuant to 26 U.S.C. § 7401.

1

Return for Estates and Trusts for the 1997 tax year, and received an erroneous refund for that year of $40,700.00.

McLean, over the Christmas holiday of 1998, left Maryland to visit her family in South Carolina. While there, McLean visited the office of James Williams, from whom she had purchased life insurance in 1995 when he was selling insurance door to door. Williams allegedly informed McLean that "you have your blessing today. The government owes us money." He told McLean that she could receive a refund of her lifetime FICA/Social Security contributions by filing a Form 1041 for Estates and Trusts. Williams then proceeded to fill out a Form 1041 for the 1997 tax year on behalf of a non-existent Trust in McLean's name, using McLean's personal income tax information. McLean says she followed Williams' instructions and copied the forms in her own handwriting before mailing them to the IRS in a self-addressed envelope provided by Williams. McLean says she did not pay Williams for his services nor did she give him a percentage of the refund she eventually received.

McLean contends that she did not understand any of the information contained in the 1997 tax return form. Nonetheless, on the Form 1041 McLean represented her personal income as trust income, claimed a deduction and a personal exemption, and reported negative taxable income. She therefore claimed credit for taxes withheld of $40,700.00, and requested that that amount be refunded to her. The tax form was filed on January 4, 1999. On February 15, 1999, the IRS issued McLean (more specifically, the non-existent Trust) an erroneous refund based on the 1997 tax return in the amount of $40,700.00, which was mailed to her address in Landover, Maryland.

McLean deposited the check into her personal account at Andrews Federal Credit Union. She must have felt uneasy about this substantial windfall, however, because she told her husband that

she had received the money from a car accident and, with the exception of one friend, never told anyone else about the tax refund. In fact, when questioned by her sister as to whether she received such a refund, McLean denied it.

McLean says she proceeded to gamble away half the proceeds in Atlantic City. She also purchased a $1,000 certificate of deposit and $1,200 worth of furniture. The remainder of the money she purportedly gave to her family in various increments, later expressing surprise at how quickly the money was spent.

On December 20, 1999, the IRS sent McLean a letter informing her that it had identified a fraudulent tax refund scheme whereby taxpayers had been incorrectly led to believe that they could obtain a refund of their lifetime FICA/Social Security contributions by filing a Form 1041. The IRS notified her that they had received just such a form with her name as trustee, and "[s]ince [it] look[ed] like those involved in the above-described scheme, [it had] been assigned to the Internal Revenue Service, Criminal Investigation Division for review."

On September 12, 2000, two IRS investigators traveled to McLean's home in Landover, Maryland to interview her about the matter. At the conclusion of the interview McLean indicated that she understood that the Collection Division of the IRS would be contacting her and that she was liable for the amount of the refund. She stated, however, that she did not think it was fair that she should have to pay the refund back since "she did not know it was a scam."

The Government has filed a Motion for Summary Judgment on the ground that there are no material facts in dispute and that judgment should be entered against McLean as a matter of law.

II.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

3

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56; see also Celotex v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material issue of fact. Celotex, 477 U.S. at 323. Once the moving party satisfies his initial burden, the non-moving party "may not rest upon his allegations," but must present evidence demonstrating the existence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court is obliged to view the facts and inferences drawn from the facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Comp. v. Zenith Radio Corp., 475 U.S. 574 (1986).

### III

Pursuant to 26 U.S.C. § 7405, the United States has the authority to sue a taxpayer for the recovery of an erroneous refund. Any portion of a tax payment erroneously refunded bears interest at the underpayment rate from the date of refund. 26 U.S.C. § 6621; 28 U.S.C. § 1961(c)(1).

Under normal circumstances, suit for recovery of an erroneous refund by suit must be brought within two years after the refund is issued. 26 U.S.C. § 6532(b). However, the Government is allowed five years from the issuance of a refund to bring suit "if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." Id. The statute does not require a showing of willfulness on the part of the taxpayer; all that is required is that a fraud or misrepresentation be made on the tax filing.

The Government submits that it is undisputed that there has never been a Janet Anderson McLean Trust, and that the refund made due to McLean's filing of a Form 1041 for Estates and Trusts was an erroneous refund based on a misrepresentation of fact. Inasmuch as suit was filed on

4

December 4, 2003, i.e., within 5 years of February 15, 1999, the date the refund was issued, the suit is timely. Therefore, says the Government, it is entitled to a judgment for the amount of the refund, $40,700.00, plus interest from the date of the issuance of the refund.[2]

McLean argues that she was not the one who committed fraud. She says that, "as far as [she] knew Mr. James Williams was a knowledgable [sic] tax preparer" whom she believed when he told her that the government owed her money. Only later, after receiving the refund, did she learn that what she "was led to believe was ginuwine [sic], was in fact a fraudulant [sic] tax refund scheme, through which many tax payers have been incorrectly led to believe they can obtain a refund of their lifetime FICA/Social Security contributions by filing a form 1041, U.S. income tax return for estates and trusts." McLean concludes by asserting that she does not have any money to hire a lawyer "to defend my case," and that she "certainly [doesn't] have 60,801.08 to pay the IRS."

The Government replies that it is not obliged to prove that McLean's misrepresentation that a Trust existed in her name was in fact "willful." See, e.g., Lane v. United States, 286 F.3d 723, 731 (4th Cir. 2002); United States v. Northern Trust Co., 372 F.3d 886 (7th Cir. 2004). Rather, it says, to prevail the Government need only establish that misrepresentation of a material fact was made. Thus, even if McLean did not know that it was fraudulent to represent that there was a trust in her name, and that the income, withholding and other items on her tax return did not pertain to a trust, assertions to that effect on her tax form are nevertheless misrepresentations. As a result, the Government submits it is entitled to recover the erroneous refund plus interest.

The Court agrees that the Government has brought this suit in timely fashion to recover the erroneous refund in the amount of $40,700.00 plus interest. The Court also agrees that whether or

---

[2] As of the filing date of the Government's Motion for Summary Judgment, the amount of interest was $20,101.05, bringing the total amount of money owed by McLean to $60,801.08.

not McLean was a knowing participant in the fraud is of no consequence. Material misrepresentations were made in the tax forms which brought McLean a substantial windfall and she owes that money back to the United States. The Court, however, cannot overlook the fact that any actual ignorance of the fraud on McLean's part must have been largely self-willed, especially given her failure to be candid with her husband and friends about the provenance of the refund. McLean remains liable for the erroneous refund based upon the misrepresentations on her tax form.

## IV

For these reasons, the Government's Motion for Summary Judgment will be GRANTED. A separate Order implementing this Memorandum Opinion will be entered.

August 19, 2005

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE